IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CRIST KUYKENDALL                                                                                PLAINTIFF

V.                                       NO. 3:04CV00220-HLJ

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                         DEFENDANT

## MEMORANDUM AND OPINION

Plaintiff, Crist Kuykendall, appeals the final decision of the Commissioner, denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Both parties have submitted Appeal Briefs, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). Provided that substantial evidence supports the Commissioner's decision, this Court may not reverse even if the record also provides substantial evidence to support a contrary outcome. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

It is well settled that the claimant has the burden of proving his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity. *Ingram v. Chater,* 107 F.3d 598, 601 (8th Cir. 1997). The Social Security Act defines "physical or mental impairment" as "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff filed his applications for DIB and SSI on March 13, 2002, alleging an onset of disability of July 15, 2001, due to lupus, arthritis, a bone transplant that caused leg swelling, back pain, and acid reflux (Tr. 50-53, 71, 190-192). A hearing was held before an Administrative Law Judge on October 20, 2004 (Tr. 196-217). Plaintiff was 37 years old and has obtained his GED (Tr. 200-201). His past work experience is as a crane operator, inspector, supervisor and farm laborer (Tr. 72, 82-82).

The ALJ analyzed Plaintiff's claim according to the familiar five-step sequential evaluation. 20 C.F.R. § § 404.1520, 416.920. In his decision, dated January 14, 2002, the ALJ found: (1) he had not engaged in substantial gainful activity; (2) he had a history of treatment and/or diagnoses for lupus, sporadic lower back pain or strain, gastroesophageal reflux (GERD), and an occasional bout with bronchitis, these impairments were considered "severe;" (3) they did not meet a listing for presumptive disability; (4) his testimony and subjective allegations regarding his symptoms, limitations and restrictions were only credible in so far as they were supported by the medical evidence of record and were not found to be fully credible for the reasons set forth in the body of the decision; (5) he retained the residual functional capacity (RFC) to perform a full range of light work activity;[1] and (6) his past relevant work as a supervisor, inspector, and farm laborer did not require the performance of activities precluded by

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted my be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

his RFC (Tr. 16-17). Therefore, the ALJ concluded that Plaintiff was not disabled.

Plaintiff argues (1) there is not substantial evidence to support the ALJ's credibility determination; and (2) the ALJ failed in his duty to fully develop the record as to Plaintiff's alleged mental impairment (*Plaintiff's Appeal Brief,* 3-9).

At the outset, the Court notes that the Plaintiff has submitted only five pages of medical evidence that falls within the relevant time period of his alleged onset date, July 15, 2001 through the date of the ALJ's decision, on January 14, 2004 (Tr. 163-176). On June 14, 2002, Plaintiff complained to his treating physician John S. Williams, M.D., of lower back pain which began only one week prior. (Tr. 167). Dr. Williams noted that, "No other joints bother him too bad...he thinks he may have strained something.... [and] he needs some more samples of AcipHex for his reflux troubles. Those help him out really well." (Tr. 167). At that time, he was only on Plaquenil. *Id.* Lumbar spine films showed symetrical joint spacing and good boney alignment. *Id.* He was given samples of Bextra, Skelaxin and AcipHex. *Id.* Dr. Williams assessed lumbar back pains, SLE, GERD, and allergic rhinitis. *Id.*

On June 20, 2002, Plaintiff returned to Dr. Williams for a recheck. Dr. Williams reported: "Overall he's doing a lot better on his medications. His back is better. There's been no CV [cardiovascular] or GI [gastrointestinal] troubles. No pains down his legs...His stomach is doing better, but he needs some more AcipHex." (Tr. 166). He was given more samples of Bextra, Skelaxin and AcipHex. *Id.*

On July 22, 2002, Plaintiff returned to Dr. Williams for a recheck of his back pain which was "a bit better." (Tr. 166). Because he did not have any AcipHex, he took Prevacid for his reflux which caused abdominal pain and diarrhea. *Id.*

Plaintiff returned on July 25, 2002 complaining of continued abdominal pain and diarrhea (Tr. 165). His serum labs were pretty stable; there were no significant metabolic abnormalities; his white cell count was pretty normal; and his PSA level was also normal. *Id.* Dr. Williams assessed atypical abdominal pains and SLE. *Id.* Because he was hurting so bad, Dr. Williams admitted him to the hospital. *Id.*

Plaintiff returned to Dr. Williams on July 31, 2002 after being released from the hospital (Tr. 164). Dr. Williams noted he was doing better, and was having normal bowel movements, though he still had some vague pains. Dr. Williams gave him a new prescription for Plaquenil and Prednisone. Plaintiff's wife told Dr. Williams that her husband was a "bit depressed," and Dr. Williams gave him a sample of Celexa (Tr. 163). Dr. Williams noted that there were no signs of acute abdomen at all, and his workup at the hospital was negative. *Id.* Dr. Williams said he would reassess him in two weeks, and Plaintiff was told to "holler back pronto" if anything gets worse acutely. *Id.*

First, Plaintiff argues that the ALJ erred in his credibility analysis because his subjective complaints were consistent with his diagnosis of systemic lupus erythematosus (SLE) and the record as a whole. Contrary to Plaintiff's argument, the ALJ properly considered his subjective complaints in accordance with *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984), and substantial evidence supports the ALJ's credibility determination. In *Polaski*, the Court stated that when assessing credibility, an ALJ is required to examine all of the evidence and the claimant's prior work record, as well as the following factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions. *Id.*

4

The ALJ observed that Plaintiff's performed his daily activities "at a largely normal level on a daily basis with the single exception that he has not [worked]" (Tr. 14, 61-62, 64). The ALJ considered the duration, frequency and intensity of Plaintiff's alleged limitations, which he discounted because the medical evidence did not support his alleged degree of limitations, and because that he had not sought or had any recent aggressive medical treatment. (Tr. 14). Notably, Plaintiff testified that his pain was only 4 on a 10 point scale (Tr. 211). The ALJ considered his medication: Prednisone, Aciphex, Mobic, and Bextra. The fact that Plaintiff was not compliant on taking his medication (Tr. 148), and the fact that it helped (Tr. 166), are factors that weight against his credibility. However, on this point, the ALJ erroneously discredited Plaintiff's subjective allegations due to his failure to take strong mediation. Failure to take strong medication is typically a factor the ALJ may use to discredit a Plaintiff; however, as the Court stated in *Gude v. Sullivan*, 956 F.2d 791, 795 (8th Cir. 1992), the treatment of both mild and severe SLE contemplates the minimum dose of corticosteroids and other agents necessary to suppress inflamation. "Heroic doses are not recommended, and the lowest effective dose should be prescribed for the shortest possible time." *Id.* (citing *Merck Manual*, 1277, 2504 (15th ed. 1987)). Despite this error, substantial evidence supports the ALJ's determination.

Plaintiff relies on *Gude* to support his argument that the ALJ erred. In *Gude*, the Court found that ALJ did not give due deference to the treating physician's disability opinion where the ALJ took the opinion out of context due to the waxing and waning of symptoms. Plaintiff's reliance on *Gude* is misplaced. Here, Plaintiff's doctor did not opine that he had significant symptoms that would interfere with permanent employment. Moreover, there is no evidence that Plaintiff experienced any waxing and waning of his lupus during the adjudicated period. In fact,

there was no evidence that he experienced any limitations during that time due to lupus.

Plaintiff has not seen his lupus doctor, Jane Alissandratos, M.D., since his alleged onset of disability (Tr. 148-152). His most recent visit was on April 26, 2001 (Tr. 148). Dr. Alissandratos noted that he was last seen in May of 2000, and was supposed to return in three months, but did not; she also noted that he had been out of medicine for two months. *Id.* He complained of being tired, hurting all over, his face has broken out and was very tender, severe acid reflux, and shortness of breath. *Id.* The fact that Plaintiff only needed medical treatment for 6 weeks during the relevant time period, and the fact that Plaintiff did not seek any treatment from his lupus doctor, weighs heavily against his claim that he experiences disabling limitations. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

At the hearing, the ALJ noted that he could not find anything in the record associated with his lupus other than a rash (Tr. 208). Plaintiff explained that was because Dr. Williams was not his lupus doctor, and that the last time he had seen his lupus doctor in Tennessee, he was told that "if [he] stayed off medicine, [lupus] would eat away at [his] cartilages and joints;" however, Plaintiff testified that he was currently taking his medicines (Tr. 210). Plaintiff testified that his pain was only a 4 on a scale of 1 to 10 (Tr. 211), and that he did not have any radiation of pain to the legs because he was in therapy which really helped. (Tr. 209). Plaintiff also testified that the only time he went to the doctor was to get a refill of his prescriptions (Tr. 209). These statements all weigh against his allegation that he suffers from debilitating limitations. In addition, the ALJ properly noted that Plaintiff did not quit working because he was unable to work, but because he

was fired.[2]  At the hearing, the ALJ theorized that Plaintiff would still be working if he had not been fired, to which the Plaintiff testified, "it's a possibility." (Tr. 204).

A review of the record provides substantial evidence to support the ALJ's credibility determination.

Second, Plaintiff argues the ALJ failed in his duty to fully develop the record as to Plaintiff's alleged mental impairment and the possibility that depression aggravates his pain. This argument is without merit.  An ALJ is permitted to issue a decision without obtaining additional evidence when other evidence in the record provides a sufficient basis for the decision. *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001); *Howard v. Massanari,* 255 F.3d 577, 581 (8th Cir. 2001).  Plaintiff first raises this issue in his appeal brief; Plaintiff's failure to assert depression as a basis for disability is significant, even if the evidence of depression is later developed.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).  There is no diagnosis of depression or any treatment notes suggesting that he experienced any depression.  The only evidence of depression was Plaintiff's wife's statement to Dr. Williams that her husband was a "bit depressed," for which Dr. Williams gave Plaintiff a sample of Celexa (Tr. 163). *See Matthews v. Bowen*, 879 F.2d 422, (8th Cir. 1989) (Claimant did not meet her burden of establishing a claim for disability due to mental impairment, and ALJ did not need to further develop the record, where the only evidence in the record indicating any emotional problems was claimant's testimony that she suffered from "nerves" and fact that doctor had prescribed an antidepressant, and physicians did not mention any emotional impairments in their reports).

---

[2] Plaintiff was fired from his job as a crane operator for failing a blood alcohol test (Tr. 202).  He then took a job at Staff Mart, but was not called back because he got a piece of metal in his eye (Tr. 203).

Accordingly, the ALJ did not err by failing to develop the record.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole that supports the decision of the ALJ. *E.g.*, *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993).

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 23rd day of September, 2005.

_____
UNITED STATES MAGISTRATE JUDGE